```
                 UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF MISSISSIPPI
                       NORTHERN DIVISION
```

CYNTHIA L. GARLAND                                          PLAINTIFF

VS.                                   CIVIL ACTION NO. 3:16CV462TSL-RHW

TRUSTMARK NATIONAL BANK                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of Trustmark National Bank (Trustmark) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Cynthia L. Garland has responded in opposition to the motion.  The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well-taken and should be granted.

Plaintiff became employed by Trustmark in its Mortgage Loan Department in August 2011 as a mortgage loan originator (MLO).  In October 2014, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), claiming discrimination based on her national origin (Asian).[1]  Plaintiff alleges that

---

[1] Plaintiff alleged in her EEOC charge that her supervisor discriminated against her by (1) denying her lead positions on committees, which affected her workflow and production, which in turn, had a direct impact on her salary; (2) denying her an opportunity to attend conferences; (3) giving her leads on loans that were smaller and produced less income and thereby adversely affected her salary.

after filing the EEOC charge, Trustmark "blatantly retaliated against [her] ... creating a hostile work environment." Plaintiff alleged that as a result of this continuous discrimination and retaliation, she was constructively discharged effective July 27, 2015.

On March 22, 2016, the EEOC issued its determination (finding no evidence of discrimination) and notice of right to sue. On June 16, 2016, plaintiff filed the present action against Trustmark, asserting claims under Title VII, 42 U.S.C. § 2000e *et seq.* for race and national origin discrimination and retaliation. In response to Trustmark's summary judgment motion, she has conceded her claims for race and national origin discrimination, leaving only her claim that Trustmark unlawfully retaliated against her by subjecting her to a hostile work environment after she filed her EEOC charge. Trustmark seeks summary judgment on plaintiff's retaliation claim, contending the alleged retaliatory actions she has identified do not rise to the level of materially adverse employment actions.

The anti-retaliation provision of Title VII forbids employers from discriminating against a job applicant because she has "'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" <u>Burlington N. & Sante Fe Ry. Co. v. White</u>, 548 U.S. 53, 59, 126 S. Ct. 2405, 165 L. Ed.

2

2d 345 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  Under the McDonnell Douglas burden-shifting framework, which applies to Title VII retaliation claims in the absence of direct evidence of retaliation, the plaintiff must first show a prima facie case of retaliation.  Standley v. Rogers, No. 16-51092, 2017 WL 958318, at *1 (5th Cir. Mar. 10, 2017).  If she establishes her prima facie case, the burden of production then shifts to the defendant employer to articulate a legitimate, nondiscriminatory or non-retaliatory reason for the employment action at issue.  See id.  If it satisfies its burden, the burden then shifts back to the plaintiff to offer evidence that the employer's stated reason was only pretext for retaliation.

    To establish a prima facie case of retaliation, the plaintiff must establish the following elements: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008).  To rise to the level of an adverse employment action for the purposes of a prima facie case of retaliation,

> there must be a "materially adverse" action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs, 810 F.3d 940, 945 (5th Cir. 2015) (quoting White, 548 U.S. at 57, 126 S. Ct. 2405).  This

3

> requirement of materiality is intended to "separate significant from trivial harms." Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008) (quoting White, 548 U.S. at 68, 126 S. Ct. 2405). Accordingly, this standard does not encompass the "'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace." Id. at 485 (quoting White, 548 U.S. at 68, 126 S. Ct. 2405). To determine whether an action is materially adverse, we look to indicia such as whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among ... co-workers." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 332 (5th Cir. 2009).

Paul v. Elayn Hunt Corr. Ctr., 666 F. App'x 342, 346 (5th Cir. 2016).

The court's first task in this case is to identify the alleged retaliatory actions. In her complaint and amended complaint, plaintiff alleged generally that after she filed her EEOC charge, Trustmark "blatantly retaliated against [her] ... creating a hostile work environment." More specifically, she charged that Trustmark retaliated against her by "denying her a promotion or even discussions of a promotion." Plaintiff has apparently abandoned her claim that she was denied a promotion in retaliation for her EEOC charge[2] and has now identified the following actions which she contends were retaliatory and constitute materially adverse employment actions: (1) in October

---

[2] Plaintiff has claimed she was denied promotions; however, that occurred before she filed her EEOC charge and thus could not have been in retaliation for her EEOC charge.

4

2014, her loan processor was assigned to assist other MLOs; (2) Trustmark declined to correct a November 2014 mass marketing mail-out which incorrectly indicated that she was still working at the Key Drive Trustmark location in Madison when she had in fact moved to a new location; (3) in March 2015, she was required to take a new marketing photograph, which resulted in a a delay of a month in the processing of her order for new business cards; and (4) her 2014 Annual Review, which was supposed to be issued in March 2015, was not issued until June 2015.[3] These allegations, considered individually or collectively, do not rise to the level of materially adverse employment actions.

With respect to the loan processor charge, plaintiff contends that in October 2014, shortly after she filed her EEOC charge, her

---

[3] Trustmark contends the court should disregard allegations (1) and (2) as these allegations appear nowhere in plaintiff's amended complaint and are directly inconsistent with her deposition testimony. See Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984) (nonmovant cannot defeat summary judgment motion with affidavit that directly contradicts, without explanation, prior sworn deposition testimony). The court is not persuaded that her current position is inconsistent with her deposition testimony. Plaintiff did testify in her deposition that her amended complaint was a "full and accurate statement" of her claims. However, Trustmark knew that was not the case, as plaintiff's amended complaint contained no factual basis for her retaliation claim. That is precisely why Trustmark asked in her deposition that she provide the specific facts that form the basis of this claim. She did identify her allegations about the marketing photo, business cards and delayed performance assessment as the basis for her retaliation claim; but she was not asked, and did not testify, that these were the only facts in support of the claim.

supervisor began assigning plaintiff's loan processor to perform work for other MLOs.  Plaintiff thought it unfair that her processor, who worked part-time, was assigned to help others, when another MLO's full-time loan processor was not assigned to help other MLOs.  Plaintiff claims that while her processor "was not as busy during that time, having [her processor] assigned to others caused delay on processing [plaintiff's] loans when [she] did have loans to process."  While plaintiff may have found this situation unfair, there is no evidence to suggest that it was other than marginally inconvenient, at worst.  There is no evidence to show that it adversely affected her "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among ... co-workers."  Stewart, 586 F.3d at 332.[4]

In November 2014, Trustmark closed its Key Drive location in Madison.  Plaintiff, who had been assigned to that location, was

---

[4] The court notes, moreover, that in rebuttal, Trustmark has presented an affidavit from plaintiff's supervisor, Paula Warren, who explains that plaintiff's loan processor was allowed to work for other MLOs because she felt that plaintiff did not have enough work to keep her busy, even on a part-time basis; and since her compensation was directly tied to the number of loans she processed, she asked to be assigned to more viable work. Warren explains that after verifying the lack of viable work with plaintiff, she granted the processor's request with her assurance that she would not allow her work for other MLOs to detract from her work on plaintiff's loans.  Warren confirms that allowing the processor to work for other MLOs did not materially impact plaintiff's performance in any way.

moved to the Trustmark branch on Highway 463 in Madison. Trustmark's Corporate Communications Department sent out a bulk mailing concerning the status of the Key Drive location which, according to plaintiff, incorrectly stated that a MLO, i.e., plaintiff, was still present at the Key Drive location. Plaintiff states that she learned in January 2015 that her customers thought she was still at the Key Drive location and were unaware of her move to the Highway 463 location. Plaintiff asked her supervisor, Paula Warren, to issue a new mass mailing to advise her customers of her move, but "Ms. Warren said they would not do that," and suggested that plaintiff could contact her own individual clients to inform them of her new location. In her response, plaintiff does not explain how the mail-out itself was retaliatory; she does not claim that Trustmark intentionally included incorrect information about her location in the mail-out or that the error was anything other than inadvertent.[5] Perhaps she claims that Warren's refusal to reissue the mail-out was retaliatory. But she

---

[5]   In addition to arguing that plaintiff has failed to present evidence that the circumstances surrounding the mail-out were materially adverse, it also contends that plaintiff cannot establish any causal link between her EEOC charge and the mail-out, as the evidence establishes that Trustmark's Corporate Communications Department which sent the mail-out had no information or reason to know anything about Garland's EEOC charge. Without evidence of such knowledge, there can be no causal connection. See Ackel v. Nat'l Communications, Inc., 339 F.3d 376, 385-86 (5th Cir. 2003) (no causal link where plaintiff produced no evidence that alleged retaliating party had knowledge of underlying protected activity).

does not explain in what way this was materially adverse. She does not argue, and has offered no evidence, that she was unable to contact her customers; and in fact, Warren's affidavit explains that she suggested that plaintiff could have the bank send out a direct mailing notifying plaintiff's customers of her relocation. Moreover, she makes no claim that her customers were unable to find her or that she lost any business as a result of the mistaken mail-out.

Plaintiff's further allegations regarding Trustmark's requiring her to take a new marketing photograph and the resulting delay in the processing of her order for new business cards falls squarely in the category of petty slights and minor annoyances, as does her complaint that her 2014 performance evaluation was not issued in a timely manner. Plaintiff notes that while her original marketing photograph may not have complied with Trustmark's Dress Guidelines – which is the reason Trustmark gave for requiring a new photograph – that original photograph had been approved by the Human Resources Department and there was accordingly no need for her to have her take a new marketing photograph. Whether or not there was a need, however, merely requiring her to have a photograph taken can hardly be characterized as materially adverse. Likewise, while her order for business cards was delayed, she offers no facts to suggest how she was adversely affected by this delay. Finally, Trustmark's

delay in issuing her performance evaluation obviously does not rise to the level of a materially adverse employment action.

In sum, plaintiff has failed to identify a single act that would arguably qualify as a materially adverse employment action. It follows that she cannot establish a prima facie case of retaliation and that, consequently, Trustmark is entitled to summary judgment.[6]

Therefore, it is ordered that Trustmark's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 21st day of July, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[6] In addition to contending that plaintiff has failed to present sufficient evidence to establish the adverse employment action prong of her prima facie case, Trustmark also contends she has failed to present evidence to support finding a causal link between her EEOC charge and the various alleged acts of retaliation, and that she has further failed to present evidence of pretext. In the court's opinion, while these additional arguments do have merit, it is unnecessary to address them further given the manifest absence of proof of any materially adverse employment action.